

1

2          The following constitutes the order of the Court.
           Signed: December 31, 2019

3

4          _____

5          **Charles Novack**
           **U.S. Bankruptcy Judge**

6

7                    UNITED STATES BANKRUPTCY COURT

8                    NORTHERN DISTRICT OF CALIFORNIA

9

In re:                                    Case No.  16-40949 CN
10                                         Chapter 7
TAMARA TAYLOR REEDER,
11                                         **ORDER RE: CONTEMPT**
           Debtor.
12

13

14          On December 19, 2019, this court conducted a continued hearing on Tamara Reeder's motion

15  to hold Ronald Eichman and his state court counsel, the Law Offices of Jason W. Estavillo, PC

16  ("Estavillo"), in contempt for violating the discharge injunction.  All appearances were noted on the

17  record.

18          Reeder filed the underlying bankruptcy as a Chapter 11 case on April 11, 2016 and the case

19  was converted to Chapter 7 on August 18, 2017.  Reeder's Chapter 7 discharge was entered on

20  November 22, 2017.  When Reeder filed her Chapter 11 case, she owned real property located at

21  5632 Weaver Place, Oakland, California through "The Reeder Trust," a self-settled revocable living

22  trust that Reeder created in 1988.  Eichman holds an interest in a promissory note (dated February

23  16, 2007, with an original balance of $780,000) secured by a junior deed of trust (executed almost a

24  year later in February 2008) against the Weaver Place property.  The promissory note was executed

25  by DreamBuilders Investments, LLC (through its three member/managers, one of whom was Reeder)

26  and The Reeder Trust (through Reeder in her capacity as the trustee of the Reeder Trust).[1]  Reeder

27

28          [1] DreamBuilders Investments, LLC did not have a fee interest in the Weaver Place property.

                                              1

**ORDER RE CONTEMPT**

also executed the deed of trust in her capacity as trustee. Eichman was well aware of Reeder's

bankruptcy filing. He filed a substantial secured proof of claim, strenuously objected to Reeder's

motion to value the Weaver Place property while she was a Chapter 11 debtor-in-possession, and

duly received notice of her Chapter 7 discharge.

On June 20, 2018, Estavillo filed a complaint for judicial foreclosure in Alameda County

Superior Court (the "Judicial Foreclosure Action") on Eichman's behalf to enforce the second deed

of trust against the Weaver Place property and obtain a deficiency judgment. Reeder is one of

several named defendants in the Judicial Foreclosure Action, and she is only named in her capacity

as trustee of the Reeder Trust. Notwithstanding this fact, paragraph 5 of the complaint's prayer for

relief seeks to hold Reeder personally liable for any deficiency judgment. Paragraph 5 states that

Eichman seeks "a judgment that Reeder is personally liable for payment of the obligation secured by

the [deed of trust] and that a deficiency judgment may be ordered following proceedings prescribed

by law . . . ." On July 17, 2019, Reeder's bankruptcy counsel informed Estavillo that the complaint's

prayer for relief violated the Bankruptcy Code's discharge injunction, and he demanded that

Estavillo promptly file an amended complaint. Although Estavillo responded on July 31, 2019 that

he would draft an amended complaint and circulate a stipulation and order authorizing its filing, no

stipulation was ever signed and no amended complaint was filed. Instead, Estavillo left the office

the next day for a month-long vacation and when he returned, had surgery which further delayed the

process. In the interim, Reeder attempted to use her threat of contempt as leverage in the Judicial

Foreclosure Action. Reeder's answer in the Judicial Foreclosure Action (which she filed in October

2018) was accompanied by a cross-complaint for damages and equitable relief. In July 2019, the

Alameda County Superior Court severed the complaint and cross-complaint and granted cross-claim

defendants' motion to compel the parties to resolve the cross-complaint through arbitration.[2] To

remedy this perceived inequity, Reeder's state court counsel ("Moss") demanded that the stipulation

to amend the complaint include several provisions unrelated to her Chapter 7 discharge. Moss

---

[2] The cross-complaint appears to arise from pre-petition acts and thus may be property of the bankruptcy estate. *See* Bankruptcy Code § 554(d).

2

demanded in an August 1, 2019 letter to Estavillo that "the entire dispute, including all claims in the

proposed First Amended Complaint, will be submitted to arbitration. All judicial actions will be

subject to a stay until the arbitration proceedings are terminated. . . . It is likely that Mrs. Reeder will

insist on receiving some compensation for the actions of your firm and your client in violating the

Chapter 7 Bankruptcy Discharge. I believe this compensation is required since your firm went to

great lengths to exacerbate the attorney fees of Ms. Reeder. In particular, you twice filed a Motion

For Judgment on the Pleadings on inadequate notice. We were required to oppose these notices on

two, separate, occassions (*sic*). Essentially, your firm made two separate attempts to deny my clients

their due process rights to a reasonable notice and a reasonable opportunity to be heard in connection

with this motion. Moreover, you knew that the issues in the Cross Complaint would be subject to

arbitration, and that the adequacy of those pleadings would be resolved by the arbitrator.

Nevertheless, you persisted in requiring me to file Opposition on your third effort to have this

motion heard."

Estavillo finally circulated a proposed first amended complaint (which removed the offensive

language in paragraph 5 of the prayer for relief) and stipulation on October 2, 2019. By then,

Reeder had filed her motion for contempt in this court, and she was unwilling to sign the stipulation.

Moss' reply declaration states that:

> "In consultation with James Shepherd, I refused to stipulate that this document could
> be filed. We observed that Paragraph 12 in the proposed FAC alleges that a combined
> total of $1,870,375.00 plus interest of $714.38 per day is due from June 30, 2018.
> As a factual matter, this claim fails to acknowledge that Mr. Eichman received
> approximately $900,000 from selling the commercial real property that actually
> secured the debt. More importantly, paragraph one of the Prayer to the FAC,
> seeks a personal judgment against Ms. Reeder for this sum. In addition, paragraph
> 2 of the Prayer of the FAC seeks a personal judgment against Ms. Reeder for the
> attorney fees incurred by plaintiff. A money judgment against Ms. Reeder for
> these sums is sought in addition to the judgment for foreclosure of the alleged lien
> on plaintiff's home [Prayer ¶3]. Thus, the proposed First Amended Complaint
> does not address, much less correct the problem with the initial Complaint."

Reeder asserts that Estavillo's actions have caused her significant emotional and physical

distress and forced her to incur substantial attorney's fees.

Reeder now seeks to hold Eichman and Estavillo in contempt under Bankruptcy Code

§ 105 for violating the bankruptcy discharge injunction. Bankruptcy Code § 105(a) provides that

this court "may issue any order, process, or judgment that is necessary or appropriate to carry out the

3

**ORDER RE CONTEMPT**

1   provisions of this title.  No provision of this title providing for the raising of an issue by a party in

2   interest shall be construed to preclude the court from, sua sponte, taking any action or making any

3   determination necessary or appropriate to enforce or implement court orders or rules, or to prevent

4   an abuse of process."  This power includes the authority to hold a creditor in contempt for violating a

5   court order such as the discharge injunction. *See Taggart v. Lorenzen, 139 S.Ct. 1795 (2019)*.  In

6   turn, Bankruptcy Code § 524(a)(2) "operates as an injunction, against the commencement of

7   continuation of an action, the employment of process, or an act, to collect, recover or offset any such

8   debt as a personal liability of the debtor, whether or not discharge of such debt is waived...."  The

9   immediate question before this court is whether the judicial foreclosure complaint seeks to hold

10  Reeder personally liable for a debt that was discharged by her Chapter 7 bankruptcy.

11          The complaint's prayer for relief is unambiguous.  Paragraph 5 states that plaintiff seeks "a

12  judgment that Reeder is personally liable for payment of the obligation secured by the [deed of trust]

13  and that a deficiency judgment may be ordered following proceedings prescribed by law . . . ."  Such

14  language on its face seemingly violates the discharge injunction.  Estavillo has never disputed that he

15  should not have included this request in the prayer for relief.  The rationale for his concession,

16  however, has changed. Estavillo initially contended that he included this language by mistake and

17  that regardless of this technical violation of the discharge injunction, Reeder's damages are minimal.

18  Estavillo now contends (after this court raised concerns regarding how Reeder held title to the

19  Weaver Place property) that under applicable California law Reeder never had any personal liability

20  under the promissory note and that, as a matter of law, there was no debt to be discharged.  Without

21  a discharged debt, he contends, there cannot be a violation of the discharge injunction.  Estavillo

22  directs this court to California Probate Code § 18000(a), which provides that "Unless otherwise

23  provided in the contract or in this chapter, a trustee is not personally liable on a contract properly

24  entered into in the trustee's fiduciary capacity in the course of administration of the trust unless

25  the trustee fails to reveal the trustee's representative capacity or identify the trust in the

26  contract."  Reeder signed the promissory note and deed of trust in her representative capacity, the

27  Reeder Trust authorized her to borrow funds and encumber the Weaver Place property, and, for

28  good reason, neither party argues that Reeder has personal liability under any of the exceptions

4

**ORDER RE CONTEMPT**

to § 18000(a).  The question, then, is whether the appropriate remedy is a contempt proceeding before this court and/or a motion for sanctions before the Alameda County Superior Court.

The answer is readily found in the Bankruptcy Code's broad definition of a claim. Bankruptcy Code 101(5)(A) defines a claim as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured . . . ."[3]  This language reflects Congress' intent to "adopt the broadest available definition of a 'claim'." *Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S.Ct. 2150, 115 L.Ed. 2d 66 (1991).  Presumably, Estavillo believed that his client could seek a deficiency judgment against Reeder when he commenced the Judicial Foreclosure Action.  The fact that he now admits that he was wrong simply means that his attempt to hold her personally liable was, ultimately, a contingent, disputed debt that cannot be resolved in his clients' favor.[4]  Furthermore, as recently noted by the United States Supreme Court in *Midland Funding, LLC v. Johnson*, 137 S.Ct 1407, 1412, 197 L.Ed. 2d 790 (2017), the term "claim" does not mean an "enforceable" claim[5]. Accordingly, this court concludes that Bankruptcy Code § 524(a)(2) applies and that Reeder may proceed with her contempt proceeding.  The court will conduct a continued status conference on **January 16, 2020 at 10:00 a.m.** in courtroom 215 of the United States Bankruptcy Court, 1300 Clay Street, Oakland, California, at which time the court will set discovery deadlines and an evidentiary hearing date.

**\* \* \* END OF ORDER \* \* \***

---

[3]  A "debt" is a "liability on a claim."  *See* Bankruptcy Code § 101(12).

[4]  Contingent on the successful prosecution of a non-judicial foreclosure complaint; disputed due to California Probate Code § 18000.

[5]  The United States Supreme Court noted that a "claim" is a "right to payment" [and] State law usually determines whether a person has such a right." *Midland Funding*, *supra* at 1411.  Given the exceptions to Probate Code § 18000, Reeder's status as a trustee of the Reeder Trust does not, standing alone, preclude a trust creditor from seeking to collect a trust debt against her.

5

**ORDER RE CONTEMPT**

Case No. 16-40949 CN

**COURT SERVICE LIST**

Recipients are ECF participants

6

**ORDER RE CONTEMPT**